UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TAMMY COUCH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 06-511-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| AMERICAN WOODMARK CORP., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendant's motion for summary judgment. [Record No. 22] Because the Plaintiff has failed to present evidence to establish that the Defendant's stated reason for terminating her (*i.e.*, insubordination) was pretextual, the Court will grant the relief sought.

## I.   BACKGROUND

Plaintiff Tammy Couch ("Couch") began working for Defendant American Woodmark Corp. ("American Woodmark") in Hazard, Kentucky, on May 1, 2002, as a "Plant Buyer/Lumber Clerk." American Woodmark's Hazard plant makes cabinet parts and Couch's duties at the plant included ordering and purchasing all supplies and parts, except lumber. She was also required to assist Herby Hoskins, the lumber buyer, with clerical work, which included "keying-in" all of the lumber received by the plant. As a "Plant Buyer/Lumber Clerk," Couch was not in a management position. Management at the plant was referred to as the Plant Level Team ("PLT"). Couch's immediate supervisor was PLT member Chuck Sizemore, the plant

engineer.  Other members of the PLT were plant manager Stan Redmon, human resources manager Kelia Miller, lumber buyer Herby Hoskins, and supervisor Tim Hamblin.

On Friday, April 14, 2006, Couch was absent from work but returned the following Monday, April 17, 2006.  Upon her return, Couch had a confrontation with PLT member Hoskins after he asked Couch to "key-in" the lumber.  Couch apparently told Hoskins that she would not comply with his request until she received a pay raise.  This verbal exchange was overheard by PLT member Miller.  Miller spoke with Hoskins about the incident, stating that Hoskins should not allow such conduct to continue.  Hoskins told Miller that Couch was going to talk with her immediate supervisor (Sizemore) about her complaints and that he (Hoskins) was not going to take any further action.

On April 18, 2006, the company's human resources corporate manager, Dave Tanger, came to the Hazard plant.  Couch approached him on that date and told him that she did not feel that she should have to "key-in" the lumber.  Tanger responded by advising Couch that keying-in lumber was part of her job responsibilities.  Approximately two weeks later (May 1, 2006), Couch had another verbal altercation with Hoskins regarding a lumber shipment received at the plant.  Again, Miller overheard the confrontation and decided to report the incident to plant manager Redmon.

Redmon, Hoskins and Sizemore discussed the details of the two incidents and decided to suspend Couch with pay.  Redmon then reviewed Couch's personnel file and discovered that, on at least one prior occasion, she had received a disciplinary write-up as a result of insubordinate behavior toward PLT member Tim Hamblin.  This incident occurred on November

24, 2004.  At the time of the first occurrence, Couch was informed that "any further incidents [would] result in termination." [Record No. 19; Sizemore Depo., Ex. 3]  After receiving this information, Redmon decided to terminate Couch's employment.  On May 10, 2006, Sizemore and Miller met with Couch and informed her of the termination.

On October 17, 2006, Couch filed a Complaint against American Woodmark in Perry Circuit Court, alleging gender discrimination under the Kentucky Civil Rights Act.  American Woodmark removed the case to this Court on November 16, 2006.  Subsequently, American Woodmark filed the present motion for summary judgment, claiming that Couch has failed to show that its reason for firing her, insubordination, was a pretext for discrimination.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue

of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002). Once the movant has satisfied this burden, the non-moving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits, to demonstrate that there is a genuine issue of material fact. *Id.*; *Celotex*, 477 U.S. at 324. However, the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact. *In re Morris*, 260 F.3d 654 (6th Cir. 2002). The nonmoving party has an affirmative obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact. *Id.* In determining whether there are any genuine issues of material fact, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## III.   ANALYSIS

Couch claims that American Woodmark discriminated against her on the basis of her gender by terminating her employment in violation of the Kentucky Civil Rights Act. American Woodmark has moved for summary judgment, arguing that Couch has failed to present sufficient evidence to prove that its alleged reason for her termination – insubordination – was pretextual.

The Kentucky Civil Rights Act ("KCRA") and Title VII[1] prohibit employers from discharging, or otherwise discriminating against, an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national

---

[1] Couch has not alleged a Title VII gender discrimination claim against American Woodmark. However, the KCRA's discrimination provisions "track [] federal law and should be interpreted consonant with federal interpretation." *Gragg v. Somerset Technical College*, 373 F.3d 763, 767 fn.1 (6th Cir. 2004) (citing *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992)).

origin. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).  To establish a claim of employment discrimination under the KCRA or Title VII, a complainant must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-66 (6th Cir. 2003).  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the United States Supreme Court set forth the burden shifting framework for analyzing workplace discrimination actions. Specifically, to set forth a prima facie case of gender discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she is qualified for her job; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class, or similarly situate non-protected employees were treated more favorably.  *Peltier v. United States*, 388 F.3d 984 (6th Cir. 2004).

If a plaintiff satisfies all four prongs, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment actions. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).  If the employer successfully articulates a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff has the burden to show that the employer's reason for the adverse employment action is pretext for what is actually unlawful racial discrimination.  *McDonnell Douglas*, 411 U.S. at 804.  American Woodmark has conceded that Couch has alleged a prima facie case of gender discrimination[2] by claiming that she is a member of a protected class, *i.e.*, a female, was

---

[2]     American Woodmark states in its motion for summary judgment that it "does not contest that Plaintiff has articulated a *prima facie* case of discrimination under the rubric of *McDonnell Douglas* and its progeny." [Record No. 22, p. 10] While the Court is not necessarily persuaded that Couch has sufficiently shown a *prima facie* case of gender discrimination, based on American Woodmark's concession, the Court will

terminated from a position for which she was qualified and was replaced by a male. American Woodmark, however, asserts that Couch cannot show that its "stated reason for terminating her was a pretext for a discriminatory purpose." [Record No. 22, p. 10]

American Woodmark has articulated a legitimate, nondiscriminatory purpose for terminating Couch's employment. In particular, it alleges that it fired Couch for insubordination. Thus, the burden shifts to Couch to show that American Woodmark's stated legitimate, nondiscriminatory basis for its employment decision was pretextual. To satisfy its burden, Couch must "do more than simply impugn the legitimacy of the asserted justification for her termination." She "must produce sufficient evidence from which [a] jury may reasonably reject [American Woodmark's] explanation." *Adams v. Tennessee Dept. of Finance and Admin.*, 179 F.App'x 266, 272 (6th Cir. 2006) (citing *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 730 (6th Cir. 1999). Specifically, Couch may refute American Woodmark's articulated reason by showing that it: (1) has no basis in fact; (2) did not actually motivate [American Woodmark's] conduct; or (3) was insufficient to warrant the challenged conduct." *Adams*, 179 F.App'x at 272-73 (citing *Kroger*, 319 F.3d at 866) (citations omitted).

Couch raises several arguments in support of her claim that American Woodmark's justification for her firing is merely a pretext to unlawful discrimination. First, she claims that American Woodmark's reason for terminating her was pretextual because she was a qualified employee who performed her job well. In particular, Couch notes that Hoskins, Sizemore and Miller testified that she had no performance problems. However, the question is not whether

_____

proceed to evaluate whether American Woodmark is entitled to summary judgment by examining whether Couch has presented sufficient evidence to establish pretext.

Couch was an effective employee but whether she was insubordinate to her supervisors by being abrasive, using a loud tone and refusing to perform her designated job duties.

As a "Plant Buyer/Lumber Clerk," Couch was required to order and purchase all supplies and parts for the plant, except lumber. She was also required to assist Hoskins, the lumber buyer, with clerical work. This clerical work included "keying-in" the lumber received by the plant. On April 17, 2006, Hoskins asked Couch to "key-in" lumber tickets. However, she refused and, in doing so, she acknowledged that she "changed her tone" and used a "loud" voice. [Record No. 21; Couch Depo., p. 61-62] Hoskins testified that, during the exchange, Couch indicated that she was not going to "key-in" the lumber until she received a raise. [Record No. 18; Hoskins Depo, pp. 29-30] A couple of weeks later, on April 28, 2006, Couch and Hoskins had a second verbal encounter. On that date, she told Hoskins that "[she] [did] not work for Steve, nor [did she] work for [him]. [Record No. 21; Couch Depo, p. 20]

Human resources manager Miller overheard both exchanges between Couch and Hoskins and reported the incidents to Redmon, the plant manager. Redmon discussed the situation with Chuck Sizemore, the plant engineer and Couch's immediate supervisor. Redmon also asked Miller to report the incidents to Dave Tanger, the corporate human resources manager. In evaluating the incidents, Redmon discovered that Couch had previously received a disciplinary write-up for an incident with a PLT member who was not her immediate supervisor. The write-up reflects that, on November 24, 2004, Couch was involved in a "confrontation [and was engaged in] insubordinate behavior with PLT member Tim Hamblin in the front lobby of the main office." [Record No. 19, Sizemore Depo., Ex. 3] It further states that she was specifically

warned that "any further incident will result in termination." [Record No. 19, Sizemore Depo., Ex. 3]

Ultimately, Redmon decided to terminate Couch for insubordination. The evidence cited supports American Woodmark's articulated reasons for firing Couch. That is, it clearly reflects that, on at least one occasion,[3] Couch received a warning that her insubordinate behavior could result in termination and that, after that warning, she was involved in two other incidents in which she refused to perform her assigned tasks.

In support of the assertion that American Woodmark's stated reason for termination is merely pretextual, Couch also offers statistics regarding the number of women in management positions at the company. Relying on the Sixth Circuit's decision in *Fuhr v. School District of the City of Hazel Park*, 364 F.3d 753 (6th Cir. 2004)[4] and the Supreme Court's decision in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), she contends that, in some cases, statistical evidence alone is sufficient to prove discrimination. However, Couch's statistical evidence has insufficient probative value to support a jury verdict on the ultimate question of discrimination. The mere fact that there are more men than women in management at American Woodmark does not support Couch's contention that she was discriminated because of her sex or that American Woodmark's stated reason for her termination was pretextual.

---

[3]     Couch's personnel file also indicates that, on April 16, 2004, she received a disciplinary write-up for not "achieving expectations set forth by [her] supervisor with regards to teamwork and attitude toward company, position and coworkers." [Record No. 19; Sizemore Depo., Ex. 3]

[4]     In *Fuhr*, the Sixth Circuit noted that the trial court properly allowed the case to go to a jury because the plaintiff had presented direct evidence of discrimination. *Fuhr*, 364 F.3d at 759. Here, Couch does not rely on any direct evidence of discrimination.

Also, in an attempt to create a triable issue of pretext, Couch claims that she was treated differently than other similarly-situated males.  In particular, she refers to three incidents that occurred during her employment with the company: (1) she applied for a shipping clerk position that was given to an alleged "lesser qualified male employee;" (2) her assigned parking spot which was in close proximity to the building was reassigned to a "male managerial employee" and that she was given a more remote spot; and (3)  male employees allegedly took longer breaks and/or lunches to work out at a local gym while she was instructed that she could not exceed her designated break time.  [Record No. 26, pp. 5-6]  While this evidence might raise an inference of discrimination regarding Couch's treatment while employed, these allegations are insufficient evidence from which a jury could reasonable reject American Woodmark's proffered explanation for terminating Couch.   Even if these incidents occurred, they are unrelated to Couch's termination and, therefore, are of "tenuous relevance."  *Wienke v. Haworth, Inc.*, 983 F2d 1071 (6th Cir. 1993), 1993 WL 6830, at *4.

Moreover, Couch has failed to offer any evidence – statistical or otherwise – demonstrating that she would not have been *fired* if she had been a male.  In fact, the evidence directly contradicts Couch's argument, inasmuch American Woodmark has presented evidence demonstrating that two male employees[5] who were insubordinate to management employees were also terminated.[6]  Couch's conclusory statements that she would not have been fired had

---

[5]     On October 24, 2004, Sherman Hampton "was asked to perform tasks related to his job and refused." He was terminated for insubordination. [Record No. 22, Ex. 1] Jeff Creech was also terminated for insubordination when he was verbally abusive to his supervisor. [Record No. 22, Ex. 2]

[6]     Implying that she was treated differently than other male employees, Couch notes that Keila Miller was familiar with Louie Hoskins' situation.  Hoskins had apparently cussed at some employees.  However, American Woodmark notes that Hoskins was not a similarly-situated male employee because he was a

she been a male and reliance on evidence with an insufficient "nexus to the discriminatory act[]" are insufficient to rebut American Woodmark's proffered reason for her termination. *See Shah v. General Elec. Co.*, 816 F.2d 264, 271 (6th Cir. 1987).

The Sixth Circuit has held in the context of discipline for violating employer rules that "an employer may successfully rebut any prima facie case of disparate treatment by showing that it honestly believed that the employee committed the violation." *Campbell v. University of Akron*, 211 F.App'x 333, 343 (6th Cir. 2006) (citing *Harris v. Elec. Data Sys. Corp.*, No. 94-1888, 1996 WL 99311, at *6 (6th Cir. Mar. 6, 1996)). Couch has not challenged the fact that American Woodmark honestly believed that she was being insubordinate. Nevertheless, based on the evidence presented, it is apparent that American Woodmark was justified in concluding that Couch was being insubordinate. Because Couch has failed to present any evidence to rebut American Woodmark's legitimate non-discriminatory reason for her termination (*i.e.*, insubordination), the Court finds that American Woodmark is entitled to summary judgment.

## IV.   CONCLUSION

For the reasons discussed herein, it is **ORDERED** as follows:

1.     American Woodmark's motion for summary judgment [Record No. 22] is **GRANTED**;

2.     This is a **FINAL** and **APPEALABLE** Order;

3.     This action is **DISMISSED** and **STRICKEN** from the Court's docket;

---

supervisor who allegedly cussed at subordinates. Although the Court does not mean to imply that such conduct is acceptable in the workplace, Couch was allegedly fired for being insubordinate to supervisors.

4.      The pretrial conference and trial previously scheduled are **CANCELLED** and

**SET ASIDE**; and

5.      A separate Judgment will be entered this date in favor of American Woodmark.

This 6th day of September, 2007.

Signed By:

**_Danny C. Reeves_**  DCR

**United States District Judge**